IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GAIL WILSON,

    *Plaintiff*,

    v.

                                    Civil Action No. ELH-11-1205

DR. DONALD H. GOTTLIEB, *et al.*,

    *Defendants*.

**MEMORANDUM OPINION**

The United States has filed a Notice of Removal (ECF 1), by which it removed from the Maryland Health Claims Alternative Dispute Resolution Office ("HCADRO") a medical malpractice claim filed by Gail Wilson, plaintiff.  In doing so, the Government relied on two statutes: the federal officer removal statute, 28 U.S.C. § 1442, and the removal statute codified in 28 U.S.C. § 2679, a provision of the Federal Tort Claims Act ("FTCA") that is commonly known as the "Westfall Act."[1]  Both of these statutes authorize, under certain circumstances, the removal to federal court of a "civil action . . . commenced in a State court."  28 U.S.C. § 1442(a)(1); *see also* 28 U.S.C. § 2679(d)(2) (authorizing removal of "any civil action or proceeding commenced upon [a certain type of tort] claim in a State court").

The Court, *sua sponte*, raised the jurisdictional question of whether the HCADRO is a "State court," within the meaning of either statute.  On August 17, 2011, after the parties had briefed the issue, the Court held a hearing to consider the issue of subject matter jurisdiction.

---

[1] Formally titled the Federal Employee Liability Reform and Tort Compensation Act of 1988, the Westfall Act was enacted in response to the Supreme Court's decision in *Westfall v. Erwin*, 484 U.S. 292 (1988), which held that federal employees did not have absolute official immunity from state tort law under all circumstances.  *See Mangold v. Analytic Servs., Inc.*, 77 F.3d 1442, 1447 n.4 (4th Cir. 1996).

For the reasons that follow, I conclude that the HCADRO qualifies as a "State court" within the meaning of 28 U.S.C. § 1442, and thus the removal was lawful.

### Factual and Procedural Background

This case represents the second iteration of a medical malpractice suit involving Ms. Wilson.  In an earlier suit, filed in federal court on August 30, 2010, Wilson alleged that the defendant physicians were professionally negligent in regard to her medical care.  *See Gail Wilson v. U.S. Dept. of Veterans Affairs, et al.*, Civ. No. ELH-10-2385 (D. Md.) ("*Wilson I*").  In particular, she claimed that, on May 29, 2009, a "long piece of surgical tubing" was left "imbedded" in her right foot during surgery to correct a "possible nerve entrapment."  Donald H. Gottlieb, M.D., defendant, a physician employed by the federal government at the Veterans Affairs Medical Center in Baltimore, performed the surgery.  In addition to Dr. Gottlieb, plaintiff sued Dr. Ngozi Kelech Ezeude, another federally-employed physician, who allegedly treated plaintiff for pain and inflammation at the surgical site following the surgery.  Plaintiff also named as defendants the United States Department of Veterans Affairs and the Baltimore VA Medical Center.  Although the United States itself was not listed as a defendant in the caption of the complaint, plaintiff identified the United States as "the Defendant" in the complaint's first paragraph.  *See Wilson I*, ECF 1.

The Government moved to dismiss *Wilson I*, claiming that plaintiff failed to allege that she had filed her claims, accompanied by a certificate of a qualified expert, with the HCADRO.  *See  Wilson I*, ECF 9 & 10.  The Government argued that, pursuant to the Maryland Health Care Malpractice Claims Act (the "Malpractice Claims Act"), Md. Code (2006 Repl. Vol., 2010 Supp.), §§ 3-2A-01 *et. seq.* of the Courts & Judicial Proceedings Article ("C.J."), the filing of a

claim and expert certificate with the HCADRO is a condition precedent to maintenance of a medical malpractice action in Maryland. *See, e.g.*, *Carroll v. Konits*, 400 Md. 167, 172, 929 A.2d 19, 22 (2007). This Court agreed and, on February 8, 2011, I granted the motion to dismiss in *Wilson I*, without prejudice. Plaintiff was afforded the opportunity to amend her complaint to allege compliance with the conditions precedent. She did not file an amended complaint, however. Accordingly, the Court issued an order closing the case on March 15, 2011. *See Wilson I*, ECF 11.

Although plaintiff did not amend her complaint in *Wilson I*, she had, in fact, filed a claim with the HCADRO, on or about January 4, 2011. Then, on May 5, 2011, the United States initiated the present case ("*Wilson II*") by filing a Notice of Removal (ECF 1), removing the HCADRO proceeding to this Court, pursuant to the federal officer removal statute and the Westfall Act. *See* 28 U.S.C. §§ 1442(a)(1), 2679(d)(2). Along with its Notice of Removal, the United States filed a copy of plaintiff's "Claim Form," filed in the HCADRO, attached to which was a letter setting forth plaintiff's "Basis of Claim" (ECF 2).[2] The Claim Form identified three "health care providers": Dr. Gottlieb and Dr. Ezeude, as well as a third physician, Dr. Janette A. Thompson.[3] The Basis of Claim reiterated plaintiff's previous allegations of malpractice against Dr. Gottlieb, and alleged that Dr. Thompson unsuccessfully performed a procedure on plaintiff's foot almost three years before the surgery performed by Dr. Gottlieb.[4] The Notice of Removal

---

[2] The Basis of Claim is dated December 29, 2010, and the Claim Form is undated. However, both the Claim Form and Basis of Claim were stamped "received" by the HCADRO on January 4, 2011, and assigned HCADRO claim number 2011-007.

[3] Dr. Thompson was not a defendant in *Wilson I*.

[4] The Basis of Claim states that the procedure performed by Dr. Thompson "was not successful and no follow-up procedures were required by the physicians." Additionally,

identified three other exhibits: summonses received by Dr. Gottlieb and Dr. Thompson,[5] and a certification by United States Attorney Rod J. Rosenstein that the three physicians "were acting within the scope of their employment as employees of the United States at the time of the incident out of which plaintiff's claim arose."

On May 13, 2011, before any response to plaintiff's claim was filed by the United States or the three individual physicians,[6] I issued an Order (ECF 10), inquiring whether the Court possessed subject matter jurisdiction.  In particular, I noted that both the federal officer removal statute and the Westfall Act grant removal jurisdiction with respect to a proceeding commenced in a "State court."   *See* 28 U.S.C. §§ 1442(a)(1), 2679(d)(2).   Because the HCADRO is an administrative agency in the executive branch of Maryland's state government, it was not clear to me that the HCADRO constituted a "State court" for purposes of removal.   Therefore, I directed the parties to brief the issue of subject matter jurisdiction.

Courts have "an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it."  *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1193 (2010). With regard to removed cases, 28 U.S.C. § 1447(c) requires: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

Judge Richard D. Bennett of this Court has previously concluded that whether "removal was improper . . . because the underlying action was pending before a state administrative

---

although Dr. Ezeude is identified on the Claim Form, he is not mentioned in the Basis of Claim.

[5] The Notice of Removal asserted that Dr. Ezeude had not been served with a summons.

[6] Hereafter, I will refer to the United States and the physicians collectively, where appropriate, as "defendants."

agency and not a state court raises [a] jurisdictional defect," which can be considered by the court, *sua sponte*. *Gottlieb v. Lincoln Nat'l Life Ins. Co.*, 388 F. Supp. 2d 574, 579 & n.3 (D. Md. 2005). Although the Fourth Circuit has not addressed the issue, the Third Circuit has likewise considered, *sua sponte*, whether removal from a state administrative agency satisfied subject matter jurisdiction. *See Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1261 (3d Cir. 1994) ("Although Sun Buick did not contend in its brief that the Board of Vehicles was not a 'court' for purposes of [the removal statute], we raised the issue *sua sponte* pursuant to our obligation to be assured of our own jurisdiction.").[7]

Plaintiff filed a "Response to Defendant's Notice of Removal" on May 25, 2011, in opposition to defendants' Notice of Removal, asserting that the case was not removed from a state court, and asking the Court to "deny" defendants' Notice of Removal (ECF 14).[8] The United States filed a memorandum on June 10, 2011 ("Def. Memo.") (ECF 16), arguing that the HCADRO constitutes a "State court" for purposes of the federal officer removal statute and the Westfall Act. In a letter to counsel dated July 27, 2011 (ECF 18), the Court posed several questions for consideration at the hearing on August 17, 2011. Thereafter, plaintiff filed a supplemental submission (ECF 19).

---

[7] The Seventh Circuit appeared to reach a contrary conclusion in *Int'l Union of Operating Engineers, Local Union No. 139 v. Carl A. Morse, Inc.*, 529 F.2d 574 (7th Cir. 1976). There, neither party had raised the issue of whether the tribunal from which the case had been removed was a state court. The appellate court mentioned the unresolved issue, but declined to consider it *sua sponte*, stating that whether a state agency "is a 'State court' within the meaning of the removal statute" is a waivable "impropriety in removal." *Id.* at 577 n.1.

[8] Plaintiff's request was technically improper, because a notice of removal is "self-executing." *Ullah v. FDIC*, 852 F. Supp. 218, 220 (S.D.N.Y. 1994). Therefore, it cannot be "denied" by a court. Rather, "[i]f the adversary wishes to contest removal . . . this must be done through a motion to remand under 28 U.S.C. § 1447, brought in the court to which the case was removed." *Id.*

To be sure, not every defect in removal is jurisdictional.  A mere "error in the removal process," such as failure of all defendants to join in the removal or failure to remove timely, is not jurisdictional and is waivable by the parties.  *Payne ex rel. Estate of Caldaza v. Brake*, 439 F.3d 198, 203 (4th Cir. 2006); *see also Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 196-97 (4th Cir. 2008).  However, I join Judge Bennett and the Third Circuit in concluding that the requirement of removal from a "State court" is jurisdictional.  Unlike mere requirements of timeliness or form, the requirement that a removed case have been pending in a state court goes to the heart of whether the controversy is appropriate for judicial resolution.  It is to that issue that I now turn.

### Discussion

The federal officer removal statute provides for the removal of a "civil action or criminal prosecution commenced *in a State court*" against "any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office."  28 U.S.C. § 1442(a)(1) (emphasis added).  Invocation of the federal officer removal statute is "predicated on the allegation of a colorable federal defense" by the defendant officer.  *Mesa v. California*, 489 U.S. 121, 129 (1989); *see Jamison v. Wiley*, 14 F.3d 222, 238-39 & n.17 (4th Cir. 1994).

The Westfall Act provides that a tort suit against the United States under the FTCA is the exclusive remedy for a claim of "injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 2679(b)(1).  The Westfall Act's removal provision states, *id.* § 2679(d)(2) (emphasis added):

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim *in a State court* shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending.  Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

The requirement of removal from a "State court" is not peculiar to the federal officer removal statute and the Westfall Act.  It is also a feature of the general removal statute, 28 U.S.C. § 1441.  That provision authorizes removal of cases from "State court" on the basis of federal question jurisdiction or diversity jurisdiction.

Notably, I am unaware of any reported decision of this Court or the Fourth Circuit deciding whether the HCADRO is a "State court" for purposes of removal.  In the context of this case, however, I am satisfied that it is.

The HCADRO is the successor to an agency known as the Health Claims Arbitration Office ("HCAO").  A handful of reported decisions of this Court considered whether the HCAO was a state court for removal purposes, although they ultimately did not resolve the issue.[9]  *See Chaghervand v. CareFirst*, 909 F. Supp. 304, 308 (D. Md. 1995) (declining to resolve contention that "the Maryland Health Claims Arbitration Office is not a 'state court' for purposes of removal," because removal was improper on other grounds); *Whitcomb v. Potomac Physicians, P.A.*, 832 F. Supp. 1011, 1012-13 (D. Md. 1993) (same); *see also Jackson v. Roseman*, 878 F. Supp. 820 (D. Md. 1995)  (remanding to HCAO based on improper removal on other grounds, without considering whether HCAO was a state court for removal purposes).  Defendants rely on

---

[9] As I shall discuss, *infra*, procedures in the HCADRO under the present Malpractice Claims Act differ in some respects from the procedures in the HCAO under the former Act.

an unreported decision from this Court, discussed *infra*, in which Judge Frederic Smalkin determined that the HCAO was a "State court" for purposes of removal under the general removal statute, 28 U.S.C. § 1441.  *See Carroll v. Total Health Care*, Civ. No. FNS-95-791 (D. Md. April 6, 1995).[10]

"Whether removal can extend to proceedings before administrative agencies has generated substantial debate in the federal courts."  *Rockville Harley-Davidson, Inc. v. Harley Davidson Motor Co.*, 217 F. Supp. 2d 673, 676 (D. Md. 2002).  As Judge Motz explained in *Harley Davidson*: "Several circuits have applied a functional test, allowing removal in cases in which a state administrative agency functions as a court. Other courts have found it impermissible to ever remove an action pending before a state agency 'regardless of how court-like the proceedings may be,'" *id.* (citations omitted), applying what might be termed a "literal test."  *Compare, e.g.*, *Floeter v. C.W. Transp., Inc.*, 597 F.2d 1100, 1101-02 (7th Cir 1979) (applying functional test); *Volkswagen de Puerto Rico, Inc. v. Puerto Rico Labor Relations Bd.*, 454 F.2d 38, 43-44 (1st Cir. 1972) (same) *with Porter Trust v. Rural Water Sewer & Solid Waste Mgmt. Dist. No. 1*, 607 F.3d 1251, 1254-55 (10th Cir. 2010) (applying literal test); *Oregon Bureau of Labor ex rel. Richardson v. U.S. West Commc'ns, Inc.*, 288 F.3d 414, 417-18 (9th Cir.

---

[10] Judge Smalkin's single-page opinion in *Total Health Care* is not available on either Westlaw or Lexis.  Defendants have also cited several cases in which malpractice claims were apparently removed from the HCADRO without the issue of jurisdiction being raised by any party or the court.  The existence of such cases does not constitute persuasive authority.  Issues that are "in the cases if any one had seen fit to raise" them, or that merely "lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."  *Webster v. Fall*, 266 U.S. 507, 511 (1924); *accord Fernandez v. Keisler*, 502 F.3d 337, 343 n.2 (4th Cir. 2007) (quoting *Webster*); *United States v. Jones*, 225 F.3d 468, 469 (4th Cir. 2000) (citing *Webster* and stating that "a court faced with a jurisdictional question is not bound by its exercise of jurisdiction in a prior case in which the jurisdictional question was not directly confronted").

2002) (same); *see also Sun Buick*, *supra*, 26 F.3d at 1261-64 (criticizing functional test, but stopping short of rejecting it because administrative agency at issue "would not qualify [as a state court] under any circumstances"); *Tool & Die Makers Lodge No. 78 Int'l Ass'n of Machinists v. Gen'l Elec. Co. X-Ray Dept.*, 170 F. Supp. 945, 949-60 (E.D. Wis. 1959) (district court decision that has been characterized as the "genesis" of the functional test).

The Fourth Circuit appeared to endorse the functional test in the context of the federal officer removal statute in *Kolibash v. Committee on Legal Ethics of West Virginia Bar*, 872 F.2d 571 (4th Cir. 1989) (holding that the West Virginia State Bar Committee on Legal Ethics was a "State court" for purposes of removal, and citing favorably to *Volkswagen de Puerto Rico*, *supra*, 454 F.2d 38). Consequently, subsequent decisions in this Court have applied the functional test. *See, e.g.*, *Woodruff v. Hartford Life Ins. Co.*, 378 F. Supp. 2d 546, 548-49 (D. Md. 2005) (discussing split over literal test and functional test, but holding removal from Maryland Office of Administrative Hearings improper on other grounds); *Gottlieb*, *supra*, 388 F. Supp. 2d at 579-82 (applying functional test and holding that Maryland Insurance Administration was not a court from which proceedings could be removed); *Harley Davidson*, 217 F. Supp. 2d at 676-80 (applying functional test and holding that Maryland Motor Vehicle Administration was not a court from which proceedings could be removed). Notably, however, *Woodruff*, *Gottlieb*, and *Harley Davidson* all arose under the general removal statute, 28 U.S.C. § 1441, and not the federal officer removal statute.

Under the literal test, the HCADRO obviously is an administrative agency, and not a court. Essentially, plaintiff urges application of the literal test. She cites the Ninth Circuit's decision in *Oregon Bureau of Labor*, *supra*, 288 F.3d 414, which adopted the literal test, and

argues that the "term 'State court' is unambiguous and clear,"  and does not encompass an executive-branch administrative agency such as the HCADRO.  However, as noted, this Court is bound to apply the functional test, in light of the Fourth Circuit's decision in *Kolibash*.

As Judge Motz explained in *Harley Davidson*, the functional test "involves two steps":

> First, the court must evaluate "the functions, powers, and procedures of the state tribunal" in order to consider whether the entity functions as a court. Second, the court must consider "the respective state and federal interests in the subject matter and in the provision of a forum." The federal court should assume jurisdiction only if the agency functions as a court and federal interests predominate over state interests.

*Harley Davidson*, 217 F. Supp. 2d at 676 (quoting *Floeter*, *supra*, 597 F.2d at 1102; internal citations omitted).

As to the first step of the functional test, defendants submit that the "HCADRO's powers and procedures closely mirror those exercised by a court."  Def. Memo. at 8.  With regard to the second step, they argue that the interest of the federal government and its employees in litigating Westfall Act immunity in federal court outweighs Maryland's interest in compliance with the procedures mandated by the State's Malpractice Claims Act.  In particular, defendants suggest that the purpose underpinning the Malpractice Claims Act, which "is to screen malpractice claims, ferret out meritless ones, and, in theory, thereby lower the cost of malpractice insurance and the overall costs of health care," *Adler v. Hyman*, 334 Md. 568, 575, 640 A.2d 1100, 1103 (1994), is "not implicated" in a malpractice suit against a federally-employed physician.  Further, they point out that "federally-employed physicians are immune from liability under the Westfall Act, and generally do not purchase malpractice insurance."  Def. Memo. at 13.  Accordingly, defendants reason that, because no malpractice insurers will defend or indemnify the physician defendants in this case, "the present case will not affect the availability or cost of malpractice

insurance in Maryland, [and] so the state's interest in ensuring the availability of affordable malpractice insurance is not implicated here." *Id.*

As indicated, in applying the functional test, I must first consider the "'functions, powers, and procedures'" of the HCADRO. *Harley Davidson*, 217 F. Supp. 2d at 676 (citation omitted). The Malpractice Claims Act establishes the HCADRO as a unit of the executive branch of Maryland's state government. C.J. § 3-2A-03(a). Under the Malpractice Claims Act, a "person having a claim against a health care provider for damage due to a medical injury" must file the claim with the HCADRO. C.J. § 3-2A-04(a)(1)(i). In turn, the director of the HCADRO must cause the claim to be served on the defendant health care provider and, "if the claim is against a physician, the Director shall forward copies of the claim to the State Board of Physicians." C.J. § 3-2A-04(a)(1)(i) to (ii).

Within 90 days after filing a claim, the claimant ordinarily must file a "certificate of a qualified expert," accompanied by a report of the expert, attesting "to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury." C.J. § 3-2A-04(b)(1)(i)(1), (b)(3)(i).[11] *See, e.g., Carroll*, *supra*, 400 Md. 167, 177-80, 929 A.2d at 25-26. A defendant who disputes liability must file a similar expert certificate and report, "attesting to compliance with standards of care, or that the departure from standards of care is not the proximate cause of the alleged injury." C.J. § 3-2A-04(b)(2)(i). In the case of a claim against a physician, the HCADRO sends copies of the expert certificates and reports to the State Board of Physicians. C.J. § 3-2A-04(b)(6).

---

[11] An expert certificate is not required if "the sole issue in the claim is lack of informed consent." C.J. § 3-2A-04(b).

After the claimant's expert certificate is filed, the HCADRO and the parties select an arbitration panel from lists maintained by the HCADRO of eligible attorneys, health care providers, and members of the general public.[12]  Unless the parties choose otherwise, the claim is then heard by the arbitration panel, after a fixed period of time for discovery.  *See* C.J. § 3-2A-05.  The arbitration proceedings are governed by the Maryland Rules, which are the rules of procedure generally applicable in Maryland judicial proceedings, *see* C.J. §§ 3-2A-02(d), 3-2A-05(b)(2), and are subject to the requirements that apply generally to arbitration proceedings under the Maryland Uniform Arbitration Act ("MUAA"), C.J. §§ 3-201 *et seq.*  This includes decision making and exercise of power by a majority of the arbitration panel, *see* C.J. §§ 3-212, 3-215; an evidentiary hearing held by the arbitration panel, with notice to the parties, *see* C.J. § 3-213; the rights to be heard, to present evidence, and to cross-examine witnesses, *see* C.J. § 3-214; the right to representation by an attorney, *see* C.J. § 3-216; and the authority of the arbitration panel to exercise subpoena power and administer oaths, *see* C.J. § 3-217.  *See* C.J. § 3-2A-05(b)(1) (incorporating C.J. §§ 3-212 to 3-217 into the Malpractice Claims Act).  However, a panel's subpoena can only be enforced by obtaining a court order.  *See* C.J. § 3-217(c).  Moreover, the "technical rules of evidence" do not apply.  C.J. § 3-214(b).

Arbitration under the Malpractice Claims Act is limited in several important ways, however.  First, the parties can opt out of arbitration entirely.  At any time between the filing of the claimant's expert certificate and sixty days after all parties have filed expert certificates, any party can waive arbitration unilaterally.  *See* C.J. § 3-2A-06B(a) to (d)(1). Second, at any time before the claim is heard by the panel, the parties can jointly waive arbitration.  *See* C.J. §§ 3-

---

[12] The selection process is governed by C.J. §§ 3-2A-03(c) & 3-2A-04(c) to (f).

2A-06A(a) to (b), 3-2A-06B(d)(2).[13]   In either event, within sixty days after arbitration is waived, the plaintiff must file a complaint in the appropriate court, either a Maryland circuit court or the federal court.   *See* C.J. §§ 3-2A-06A(c), 3-2A-06B(f).[14]   During the ensuing litigation, the parties are permitted, but not required, to engage in a non-binding "neutral case evaluation" to be performed by a panel selected through the HCADRO, in much the same manner as an arbitration.   *See* C.J. §§ 3-2A-06A(f), 3-2A-06B(i).

If the parties do not waive arbitration, an evidentiary proceeding ensues.   *See* C.J. §3-2A-05.   Once the panel reaches a decision and issues an award, any party may reject the arbitration panel's award "for any reason."   C.J. § 3-2A-06(a).   The party who rejects the award must file a notice of rejection of the award with the panel and the HCADRO, ordinarily within thirty days after the award is issued, *see id.*, and concurrently must "file an action in court to nullify the award."   C.J. § 3-2A-06(b)(1).   Unlike a proceeding to modify or vacate a garden-variety arbitration award under the MUAA, a court action to nullify an award from an HCADRO arbitration panel is, in essence, a *de novo* proceeding.   The case may be tried to a jury or to the court.   C.J. § 3-2A-06(b)(2).   However, the panel's award ordinarily "is admissible as evidence in the judicial proceeding" and is "presumed to be correct," with "the burden . . . on the party

---

[13] Notably, under a prior version of the Malpractice Claims Act, under which the HCADRO was denominated as the HCAO, only a joint waiver of arbitration was permissible. *See* Md. Code (1989 Repl. Vol., 1994 Supp.), §§ 3-2A-01 *et seq.* of the Courts & Judicial Proceedings Article**.**   The provision permitting a party to waive arbitration unilaterally was enacted by 1995 Md. Laws, ch. 582, which took effect after Judge Smalkin's decision in *Total Health Care*, *supra*.

[14] If arbitration is waived before the defendants have filed expert certificates and reports, C.J. § 3-2A-06B(b)(3) and (c)(3) require that the defendants file their expert certificates and reports in the judicial proceeding.   However, in *Willever v. United States*, 775 F. Supp. 2d 771, 778-86 (D. Md. 2011), Judge Roger Titus held that a defendant's expert certificate and report requirement under the Malpractice Claims Act is supplanted by the expert disclosure provisions of Fed. R. Civ. P. 26(a)(2).

rejecting it to prove that it is not correct." C.J. § 3-2A-06(d). But, if either party contends that the award should be modified or vacated for a reason that is a ground for modification or vacatur of arbitration awards generally under the MUAA, that allegation must be "made by preliminary motion, and shall be determined by the court without a jury prior to trial." C.J. § 3-2A-06(c).[15] If the court concludes that the award should be vacated under the MUAA standard, "trial of the case shall proceed as if there had been no award," *id.*, and the arbitrators' award is not admissible in evidence. C.J. § 3-2A-06(d).

On the other hand, if no party rejects the arbitration panel's award, the award becomes "final and binding on the parties." In that circumstance, the director of the HCADRO is authorized to submit the award for confirmation by the appropriate Maryland circuit court, in accordance with the procedure for confirmation of arbitration awards under the MUAA. C.J. § 3-2A-05(i).

---

[15] Unlike the Malpractice Claims Act, the MUAA "contemplates an extremely limited role for the courts in reviewing or countermanding an arbitrator's decision." *Sharp v. Downey*, 197 Md. App. 123, 149, 13 A.3d 1, 16 (2010), *cert. granted*, 419 Md. 646, 20 A.3d 115 (2011). Judicial review of an ordinary arbitration award under the MUAA is anything but *de novo*. The limited grounds for a court's modification or vacatur of an arbitration award under the MUAA are set forth in C.J. §§ 3-223 & 3-224, and include an "evident miscalculation of figures," C.J. § 3-223(b)(1); procurement of the award by "corruption, fraud, or other undue means," C.J. § 3-224(b)(1); "evident partiality . . . , corruption . . . , or misconduct" of an arbitrator, C.J. § 3-224(b)(2); the arbitrators exceeding their powers or the scope of the matter to be arbitrated, *see* C.J. §§ 3-223(b)(2), 3-224(b)(3); or major irregularities in the conduct of the arbitration hearing, *see* C.J. § 3-224(b)(4). Maryland courts have held that the MUAA's statutory grounds for vacatur confer no authority for a court to review an arbitration award on substantive grounds, unless the award is "completely irrational" or displays "manifest disregard of the law." *Sharp*, 197 Md. App. at 149-59, 13 A.2d at 17-22. The standard of judicial review of an arbitration award under the MUAA, like that of its counterpart, the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, is "'among the narrowest known to the law.'" *Long John Silver's Restaurants, Inc. v. Cole*, 514 F.3d 345, 349 (4th Cir. 2008) (citation omitted).

In short, the Malpractice Claims Act encourages, but does not mandate, arbitration of medical malpractice claims.  Even if a claim is submitted to arbitration, any party may reject the arbitration award "for any reason." C.J. § 3-2A-06(a).  The only truly mandatory aspects of the Malpractice Claims Act procedure are submission of the claim to the HCADRO in advance of filing a complaint in a court (which ensures notification to the State Board of Physicians of medical malpractice claims against individual physicians), and, in most cases, each party's submission of a certificate and report of a qualified expert.[16]

In *Gottlieb*, *supra*, 388 F. Supp. 2d 574, Judge Bennett utilized the functional test in determining whether a proceeding conducted in the Maryland Office of Administrative Hearings ("OAH"), adjudicating an insurance regulatory dispute filed with the Maryland Insurance Administration ("MIA"), was a proceeding in a "State court" for purposes of the general removal statute.  *See id.* at 575-76.[17]  Judge Bennett concluded that, although the MIA, acting through the OAH, "utilizes many court-like procedures, it lacks traditional judicial powers and therefore is

---

[16] As noted, in *Wilson I* the Government moved to dismiss because plaintiff had not filed her claim with the HCADRO before filing suit in federal court.

[17] The OAH is an independent agency in Maryland's executive branch, created to "provide an impartial hearing officer in contested cases." *Anderson v. Dept. of Pub. Safety & Correctional Servs.*, 330 Md. 187, 213, 623 A.2d 198, 211 (1993).  *See generally* Md. Code (2009 Repl. Vol., 2010 Supp.), §§ 9-1601 *et seq.* & §§ 10-201 *et seq.* of the State Government Article.  The OAH consists of Administrative Law Judges ("ALJs") and support staff, and operates under uniform rules of procedure.  *See* COMAR 28.02.01 *et seq.*  Other executive agencies may delegate to the OAH their authority to hear contested cases.  *See Anderson*, 330 Md. at 192, 623 A.2d at 200.  For some agencies, the decision of the OAH constitutes the final decision of the agency.  *See, e.g.*, *John A. v. Bd. of Educ. for Howard County*, 400 Md. 363, 373 n.11, 929 A.2d 136, 142 n.11 (2007).  Other agencies delegate to OAH only the authority to "'develop a record and to make a recommendation to the agency head, which may either be adopted, modified, or rejected at the agency's discretion.'" *Md. Bd. of Physicians v. Hunt*, 170 Md. App. 369, 383, 907 A.2d 321, 329 (citation omitted), *cert. denied*, 396 Md. 12, 912 A.2d 648 (2006).

not the functional equivalent of a court." *Gottlieb*, 388 F. Supp. 2d at 580.  He explained, *id.* at

580-81 (internal citations omitted):

> MIA does not exercise traditional judicial powers. For example, MIA cannot enforce subpoenas through a contempt power.  Instead, MIA must petition a state court for an order directing compliance with the subpoena and imposing appropriate penalties.  MIA's decisions, moreover, are appealable to state circuit court.  Finally, in order to enforce its decisions, MIA must bring a separate action in state circuit court.

> MIA can provide only limited remedies and relief.  For example, the Unfair Claim Settlement Practices Act, which is part of the Maryland insurance article, "does not provide or prohibit a private right or cause of action to, or on behalf of, a claimant or other person in any state."  Although MIA is authorized to make license determinations, issue orders, impose penalties on licensees, and order licensees to make limited restitution to claimants who have suffered actual economic damages, MIA lacks the power to enforce any such orders.  Finally, MIA's ability to issue injunctive-like relief is severely limited.

Similarly, in *Harley Davidson*, Judge Motz concluded that the Maryland Motor Vehicle

Administration was "not the functional equivalent of a court because it does not exercise judicial

power."  217 F. Supp. 2d at 677.  Judge Motz explained, *id.* at 677-78 (internal citations and

footnotes omitted):

> Unlike a court, the MVA cannot enforce the subpoenas it issues through a contempt power.  Rather, it must petition a state court for an order to compel the appearance of witnesses at its hearings or the production of documents it has requested.  Further, the MVA's decisions are appealable to state circuit court, and are not given preclusive effect until they are ratified by a state court.

> Most importantly, however, the MVA's lack of judicial power in the context of this case is illustrated by the fact that the remedies or relief it can provide are severely limited. Neither declaratory relief, injunctive relief, or monetary damages are available for violations of [the relevant code provisions]. Rather, the MVA's response, should it find a violation or attempted violation of these provisions, is to take licensing action against [a licensee]—revoking, suspending, or refusing to renew its license to transfer vehicles in Maryland. The statute explicitly acknowledges these limitations by directing those seeking monetary damages to file suit "in any court of competent jurisdiction."  The MVA therefore has "manifest limitations" on its adjudicative powers in this context,

which render it more like a quintessential agency than the functional equivalent of a court.

In *Woodruff*, Judge Titus ultimately did not need to determine whether the OAH was a "State court," because removal was improper on other grounds; however, he was skeptical that OAH could be considered a "State court" under the general removal statute. *See Woodruff*, 378 F. Supp. 2d at 548-49.

Like the MIA, the OAH, and the Motor Vehicle Administration, the HCADRO—or, at least, an arbitration panel convened by the HCADRO—has an adjudicatory role. It can issue process and subpoenas and conduct evidentiary hearings. Procedures in the HCADRO are substantially governed by the Maryland Rules, which establish the procedures for all judicial proceedings in Maryland.

The HCADRO is limited in many of same the ways as the agencies in *Gottlieb* and *Harley Davidson*. It cannot enforce its own subpoenas, and its determinations are given effect through confirmation proceedings that must be conducted by a court. The Malpractice Claims Act does not indicate that the HCADRO has any injunctive powers. Indeed, arbitration proceedings in the HCADRO are totally optional—they can be waived unilaterally by either party.

Moreover, even if the parties proceed to arbitration in the HCADRO and the arbitration panel renders an award, any party may reject the award for any reason, and may institute what is essentially a completely *de novo* medical malpractice proceeding in court. In that event, the only effect of the award is that it may be introduced in evidence and is presumptively correct. Thus, in cases in which the health care provider defendant is the party against whom the arbitration panel ruled, the award has the effect of shifting the burden of proof to the defendant.

- 17 -

In terms of the power and binding effect of its decisions, the HCADRO seems less court-like than the OAH in *Gottlieb*. The award of an arbitration panel in the HCADRO has significantly less weight than an ALJ's ruling, such as in *Gottlieb*, because the ALJ's decision is reviewed by a State circuit court under a deferential "substantial evidence" standard. *See, e.g.*, *Lawson v. Bowie State Univ.*, ___ Md. ___, ___ A.2d ___, No. 119, Sept. Term 2010, slip op. at 10 (filed Aug. 16, 2011) (stating that judicial review of an OAH decision is "'limited to determining if there is substantial evidence in the record as a whole to support the [ALJ's] findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law'") (citation omitted); *see also Motor Vehicle Admin. v. Loane*, 420 Md. 211, 222, 22 A.3d 833, 840 (2011). In contrast, a party who loses before the HCADRO is entitled to a trial *de novo*.

Yet, in *Total Health Care*, Judge Smalkin determined that the HCAO, the predecessor to the HCADRO, qualified as a "State court" under the general removal statute. In support of that conclusion, Judge Smalkin stated: "Proceedings before the Health Claims Arbitration Office are judicial in nature and are mandatory, unless waived. Witnesses appear, evidence can be subpoenaed, and rulings are made on questions of law and fact. The award of the panel automatically becomes embodied in a judgment unless exception is taken to it." However, Judge Smalkin did not have the benefit of the subsequent decisions by other judges of this Court in *Gottlieb*, *Harley Davidson*, and *Woodruff*, in which the Court applied the functional test and did not conclude that state administrative agencies were "State courts" for purposes of the general removal statute. It is also salient that Judge Smalkin considered a version of the statute that has since been superseded. Under the version of the Malpractice Claims Act then in effect, a party

had no ability unilaterally to waive arbitration in the HCAO.  In my view, this is a significant difference in the power and authority of the tribunal.

I need not determine, however, whether Judge Smalkin was correct in determining that the HCADRO's predecessor was a "State court" for purposes of the general removal statute, nor do I need to determine whether the HCADRO qualifies as a "State court" under that statute.  This is because the case *sub judice* was removed under the federal officer removal statute and the Westfall Act, rather than the general removal statute.  As I have noted, the functional test encompasses two steps.  The second step, which has been characterized as the "'more critical inquiry,'" is an "evaluation of the respective state and federal interests in the dispute."  *Harley Davidson*, 217 F. Supp. 2d at 679 (citation omitted).  As I shall explain, the Fourth Circuit's decision in *Kolibash* compels the conclusion that the removal statute under which a given case has been removed has critical importance for the second step of the functional test.

In *Kolibash*, the Fourth Circuit concluded that a West Virginia State Bar disciplinary proceeding against the United States Attorney for the Northern District of West Virginia could be removed to federal court under the federal officer removal statute.  *See Kolibash*, 872 F.2d at 577.  There, the State disciplinary body initiated proceedings against the U.S. Attorney, based on his alleged failure adequately to supervise an Assistant United States Attorney working under him.  The Assistant was accused of taking prosecutorial actions in a federal criminal proceeding involving a former client from the period when the prosecutor was in private practice.  *Id.* at 572.  The U.S. Attorney removed the proceeding to federal district court, but the district court remanded, "declaring that 'licensure of professionals is basically a state function,'" and that "members of the State Bar 'who serve as federal officials are no less subject to the requirements

of the Code of Professional Responsibility that is the cornerstone of licensure to practice the

profession' in West Virginia." *Id.* (quoting district court).  The Fourth Circuit held that it had

authority to review the district court's remand order, and reversed.  *Id.* at 573.

Applying the functional test, the *Kolibash* Court held that the West Virginia State Bar

Committee on Legal Ethics constituted a "State court" for purposes of 28 U.S.C. § 1442.  Of

relevance here, the Court described the functions of the Committee on Legal Ethics, *id.* at 576:

> The Committee on Legal Ethics['] . . . procedures are adjudicatory in nature. The
> Committee is authorized to hold evidentiary hearings, subpoena witnesses, take
> testimony under oath in an adversary proceeding, and otherwise conduct itself as
> a court. It also makes factual findings and recommends attorney sanctions to the
> West Virginia Supreme Court of Appeals. A Committee investigation can result
> in public reprimands, suspensions, or disbarment of lawyers who practice in West
> Virginia.

In the *Kolibash* Court's view, these court-like features of the Committee were sufficient

to bring it within the scope of the federal officer removal statute, in light of the strong federal

interests at stake, which came to bear at the second step of the functional test.  To be sure, the

Court also noted that the Committee on Legal Ethics was "defined as an instrumentality of the

West Virginia Supreme Court of Appeals."  *Id.*  But, the agency's placement in the judicial

branch versus the executive branch did not seem to be determinative in the Court's analysis.

Rather, applying the second step of the functional test, the *Kolibash* Court emphasized

the important federal interest at stake.  The Court explained: "The central concern of the [federal

officer] removal statute is that a federal officer or agent shall not be forced to answer for acts

performed under color of his office in anything but a federal forum."  *Id.*  It reasoned that the

"underlying rationale" of 28 U.S.C. § 1442 is that "'Congress has decided that federal officers,

and indeed the Federal Government itself, require the protection of a federal forum.'"  *Id.* at 574

(quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).  Weighing the strong federal interest underlying the federal officer removal statute against the competing state interest in regulation of licensed attorneys, the *Kolibash* Court said: "Regulation of the legal profession admittedly implicates significant state interests, but the federal interest in protecting federal officials in the performance of their federal duties is paramount."  *Kolibash*, 872 F.2d at 575.  Given the strong federal interest in the provision of a federal forum, the Court held: "If a state investigative body operates in an adjudicatory manner, and if a federal officer or his agent is subject to its process, the statutory requirements of § 1442(a)(1) are satisfied."  *Id.* at 576.

The HCADRO's adjudicatory powers are, in essence, subject to the agreement of the parties to utilize its powers.  Those powers, if utilized, are similar to those of Maryland agencies that have been held not to be State courts for purposes of the general removal statute.  But, *Kolibash* teaches that, in the context of the federal officer removal statute, the powerful interest in ensuring that "a federal officer or agent shall not be forced to answer for acts performed under color of his office in anything but a federal forum" strongly tilts in favor of recognizing an adjudicatory state agency as a State court.  *Id.*

As I see it, *Kolibash* and the case *sub judice* are distinguishable from *Gottlieb*, *Harley Davidson*, and other cases that have determined that a state administrative agency was not a "State court" under the general removal statute.  *Gottlieb* involved a dispute between an insurance company and its Maryland customers regarding the insurance company's alleged non-compliance with state insurance law.  *See Gottlieb*, 388 F. Supp. 2d at 575.  The parties were private individuals and a private insurance company, and removal was predicated on diversity jurisdiction under the general removal statute.  *Id.*  Applying the second step of the functional

test, Judge Bennett described the state interest in such a dispute as "substantial," and observed that, in contrast, "the federal interest in the underlying dispute is slight. No issue of federal law is involved." *Id.* at 582. Similarly, in *Harley Davidson*, in which diversity was also the basis for removal, Judge Motz said: "The sole federal interest at stake in this dispute is in providing a forum to diverse parties. Such an interest is inadequate in light of the state's substantial interest in administering a state program and preserving the oversight role of a state agency." *Harley Davidson*, 217 F. Supp. 2d at 680.

In contrast to *Gottlieb* and *Harley Davidson*, removal in this case, as in *Kolibash*, is based on the federal officer removal statute, which inherently implicates overriding federal interests. By definition, a powerful interest in provision of a federal forum is present in every case arising under 28 U.S.C. § 1442. I do not subscribe to the Government's view that the purposes of the Malpractice Claims Act are "not implicated" in a malpractice suit against a federally-employed physician.[18] However, the State interests served by the HCADRO procedure must yield to the significant federal interest in provision of a federal forum for the litigation of claims against federal employees sued for acts taken under color of their office. If West Virginia's interest in attorney discipline and regulation of members of its state bar was insufficient, in *Kolibash*, to outweigh the federal interests served by 28 U.S.C. § 1442, Maryland's interest in promoting arbitration of medical malpractice claims surely cannot outweigh those federal interests either.

---

[18] Indeed, a long line of authority in this Court has held that the provisions of the Malpractice Claims Act with respect to the filing of a claim and expert certificate in the HCADRO apply with equal force to claims against physicians employed by the United States. *See, e.g.*, *Willever*, *supra*, 775 F. Supp. 2d 771; *Hampel v. United States*, 706 F. Supp. 2d 629, 631 (D. Md. 2010); *Mizrach v. United States*, Civ. No. AMD-08-2030 (D. Md. Feb. 17, 2009), *aff'd per curiam*, 334 F. App'x 571 (4th Cir. 2009) (unreported), *cert. denied*, 130 S. Ct. 3516 (2010); *Anderson v. United States*, Civ. No. CCB-08-3, 2008 WL 3307137 (D. Md. Aug. 8, 2008); *Mayo-Parks v. United States*, 384 F. Supp. 2d 818, 820-21 (D. Md. 2005).

In sum, although the HCADRO is obviously not a court, it has the minimum of court-like functions that suffice to render an agency a "State court" for purposes of the federal officer removal statute under *Kolibash*: it "operates in an adjudicatory manner, and . . . a federal officer or his agent is subject to its process."  *Kolibash*, 872 F.2d at 576.  Like the Committee on Legal Ethics in *Kolibash*, the HCADRO is "authorized to hold evidentiary hearings, subpoena witnesses, [and] take testimony under oath in an adversary proceeding."  *Id.* Because the HCADRO possesses those attributes, and because the interests served by the federal officer removal statute outweigh Maryland's interests in providing a state administrative forum, "the statutory requirements of § 1442(a)(1) are satisfied."  *Id.*

I realize that the foregoing analysis logically implies that a given state agency could be a "State court" under the federal officer removal statute, and not a "State court" under the general removal statute.  It might seem anomalous that Congress could have intended the term "State court" to have different meanings in adjacent provisions of the United States Code.  But if that result seems unusual, it is nonetheless inherent in application of the functional test, which the Fourth Circuit adopted in *Kolibash* as controlling circuit precedent.  In my view, *Kolibash* compels the conclusion that the HCADRO qualifies as a "State court" for purposes of 28 U.S.C. § 1442.[19]  Accordingly, the Court possesses subject matter jurisdiction in this case.


Date:   September 23, 2011               /s/
                                          Ellen Lipton Hollander
                                          United States District Judge

---

[19] Because removal from the HCADRO is proper under 28 U.S.C. § 1442, I need not resolve definitively whether the HCADRO is also a "State court" for purposes of the Westfall Act.  I note, however, that the Westfall Act is animated by substantially the same overriding interests in provision of a federal forum that undergird the federal officer removal statute.