IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GAIL WILSON,

    *Plaintiff*,

    v.                              Civil Action No. ELH-11-1205

UNITED STATES OF AMERICA,

    *Defendant*.

**MEMORANDUM OPINION**

Gail Wilson, plaintiff, alleges medical malpractice committed by three federally-employed physicians who, in 2006 and 2009, participated in two surgical procedures on her right foot, as well as post-operative care.  The United States has moved to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  The motion has been fully briefed,[1] and no hearing is necessary to resolve it.  *See* Local Rule 105.6.

For the reasons that follow, I will grant the motion in part and deny it in part.  In particular, with respect to the first surgery, which was performed by Dr. Janette A. Thompson on July 26, 2006, the government's motion will be granted.  However, the government's motion will be denied with respect to plaintiff's claims regarding the second surgery, performed by Dr. Donald H. Gottlieb on May 28, 2009, and the associated post-surgical care provided by Dr. Ngozi E. Ezeude.

**Background**

The underlying facts and procedural history are summarized in the Court's Memorandum Opinion of September 23, 2011 (ECF 21), reported as *Wilson v. Gottlieb*, 821 F. Supp. 2d 778

---

[1] I considered the government's motion ("Motion") (ECF 24), plaintiff's opposition ("Opp.") (ECF 29), and the government's reply ("Reply") (ECF 32), along with various exhibits.

(D. Md. 2011) ("*Wilson II*").[2]  In brief, Dr. Thompson, along with another physician, Dr. John J. Motray,[3] performed the first surgery on plaintiff's right foot on July 26, 2006.  ECF 2 at 2.  The government states that the first surgery was a "plantar fascia release," Motion at 2, but there are few details in the record about it.  According to plaintiff, the operation was performed "due to complications with her foot," but it "was not successful and no follow-up procedures were required by the physicians."  *Id*.

Almost three years later, on May 28, 2009, Dr. Gottlieb performed the second surgery on plaintiff's right foot, to correct a "possible nerve entrapment."  *Id.*  During several post-operative examinations conducted by Dr. Ezeude, plaintiff complained of "inflammation and severe pain at and around the surgical site."  *Id.*; *see also* ELH-10-2385, ECF 1 ¶ 11.  On July 6, 2009, Ms. Wilson was transported by ambulance to Northwest Hospital in Baltimore, complaining of intense pain.  ECF 2, at 2.  X-ray imaging revealed that "a long piece of surgical tubing was still imbedded" in plaintiff's right foot.  *Id.*  Later the same day, plaintiff was admitted to the Baltimore Veterans Affairs Medical Center ("Baltimore VAMC") and was "diagnosed with a severe infection."  *Id.*  After the infection was resolved by means of antibiotic treatment, Dr. Gottlieb performed a third surgery to remove the surgical tube.  *Id.*

Plaintiff filed the first iteration of this case on August 30, 2010, as a lawsuit against Dr. Gottlieb, Dr. Ezeude, the United States Department of Veterans Affairs ("VA"), and the Baltimore VAMC.  She did not name Dr. Thompson as a defendant, nor did she mention the first surgery in her complaint.  Moreover, plaintiff did not allege that she had filed her claim with the

---

[2] After the *Wilson II* decision was issued, the United States was substituted for the individual physicians as the sole defendant, by consent of the parties and pursuant to the Westfall Act, 28 U.S.C. § 2679(d)(2).  *See* ECF 27.

[3] Plaintiff has not alleged that Dr. Motray was medically negligent.

Maryland Health Claims Alternative Dispute Resolution Office ("HCADRO"), nor did she amend her complaint to add such an allegation, despite being afforded the opportunity to do so. *See id.* at 780.   Therefore, on defendants' motion, and by Memorandum and Order dated February 8, 2011 (ELH-10-2385, ECF 9 & 10), the Court dismissed plaintiff's complaint for failure to allege that she had filed her claim with the HCADRO.   *See Wilson v. U.S. Dept. of Veterans Affairs*, Civ. No. ELH-10-2385, 2011 WL 582577 (D. Md. Feb. 8, 2011) ("*Wilson I*").

As I discussed in my rulings in both *Wilson I* and *Wilson II*, the HCADRO is an administrative body established by the Maryland Health Care Malpractice Claims Act (the "Malpractice Claims Act"), Md. Code (2006 Repl. Vol., 2011 Supp.), §§ 3-2A-01 *et seq.* of the Courts & Judicial Proceedings Article ("C.J.").   Filing a malpractice claim with the HCADRO is a condition precedent to maintenance of a medical malpractice lawsuit in Maryland.   *See, e.g.*, *Carroll v. Konits*, 400 Md. 167, 172, 929 A.2d 19, 22 (2007).

The Malpractice Claims Act "encourages, but does not mandate, arbitration of medical malpractice claims" by arbitration panels convened through the HCADRO.   *Wilson II*, 821 F. Supp. 2d at 786.   Arbitration can be waived unilaterally by either party, however.   Moreover, even if an arbitration is conducted, the arbitration award may be rejected by either party in favor of a *de novo* judicial proceeding.   *See id.*   The only truly mandatory aspects of the Malpractice Claims Act procedure are "submission of the claim to the HCADRO in advance of filing a complaint in a court (which ensures notification to [Maryland's] State Board of Physicians of

medical malpractice claims against individual physicians), and, in most cases, each party's submission of a certificate and report of a qualified expert." *Id.*[4]

On or about January 4, 2011, *i.e.*, after *Wilson I* was filed but before it was dismissed, plaintiff had filed a claim with the HCADRO.  As noted, she had not amended her complaint to add that information.  On May 5, 2011, after the dismissal of *Wilson I*, the United States initiated the present case by removing plaintiff's claim from the HCADRO to this Court, on the basis of the federal officer removal statute, 28 U.S.C. § 1442(a)(1), and the Westfall Act, 28 U.S.C. § 2679(d)(2).  Along with its Notice of Removal (ECF 1), the United States filed a copy of plaintiff's "Claim Form," filed in the HCADRO, attached to which was a letter setting forth plaintiff's "Basis of Claim" (ECF 2).  The government also filed a certification by United States Attorney Rod J. Rosenstein that the three physicians "were acting within the scope of their employment as employees of the United States at the time of the incident out of which plaintiff's claim arose." ECF 6.

Thereafter, I directed the parties to brief the jurisdictional issue of whether it is possible to "remove" a proceeding from the HCADRO, given that the HCADRO is an administrative agency in the executive branch of Maryland's state government, and is not a state court.  Applying the so-called "functional test" adopted by the Fourth Circuit in *Kolibash v. Committee on Legal Ethics of West Virginia Bar*, 872 F.2d 571 (4th Cir. 1989), I concluded in *Wilson II* that, although the HCADRO is not literally a state court, it constitutes a "State court" from which a proceeding may be removed, within the meaning of 28 U.S.C. § 1442.  I reached this conclusion because the HCADRO (or, at least, an arbitration panel convened by the HCADRO)

---

[4] The statutory requirements as to the certificate and report of a qualified expert are discussed, *infra*.

"'operates in an adjudicatory manner, . . . a federal officer or his agent is subject to its process,'" and "the interests served by the federal officer removal statute outweigh Maryland's interests in providing a state administrative forum" for medical malpractice claims. *Wilson II*, 821 F. Supp. 2d at 791 (quoting *Kolibash*, 872 F.2d at 576).

The present Motion followed, in which the government seeks dismissal of plaintiff's claims for lack of subject matter jurisdiction.  According to the government, plaintiff's malpractice claim is barred with regard to the first surgery, performed by Dr. Thompson in 2006, because plaintiff failed to provide notice of her claim to the VA within two years after the claim arose, as required by the Federal Tort Claims Act ("FTCA"), codified in scattered sections of Title 28 of the U.S. Code.  The government also maintains that, even if plaintiff's claims regarding the first surgery are not barred due to failure to comply with the notice requirement, the content of the expert certificate and report are insufficient as to the first surgery.  Similarly, as to the second surgery, performed by Dr. Gottlieb in 2009, and the post-surgical care provided by Dr. Ezeude, the government contends that plaintiff's certificate and report of qualified expert are insufficient to satisfy the requirements of the state Malpractice Claims Act.

Additional facts will be included in the discussion.

## Discussion

## A.  Rule 12(b)(1) Standard

A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction; or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'"  *Kerns v. United States*, 585 F.3d 187,

192 (4th Cir. 2009) (citation omitted); *see also Buchanan v. Consol. Stores Corp.*, 125 F. Supp. 2d 730, 736 (D. Md. 2001).  In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192; *see also Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  In a factual challenge, on the other hand (such as the Motion at issue here), "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192.  In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004).  "Unless 'the jurisdictional facts are intertwined with the facts central to the merits of the dispute,' the district court may . . . resolve the jurisdictional facts in dispute by considering evidence . . . such as affidavits." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-48 (4th Cir. 2009) (citation omitted).  The court may also "hold an evidentiary hearing to determine whether the facts support the jurisdictional allegations." *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999); *accord Kerns*, 585 F.3d at 192.

"When, as here, a defendant challenges the existence of subject matter jurisdiction in fact, the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence." *Vuyyuru*, 555 F.3d at 347.  In this case, none of the relevant facts are disputed; no party has requested an evidentiary hearing, and a hearing does not appear necessary.

## B.  The First Surgery and the FTCA Notice Requirement

Under the Federal Tort Claims Act, Congress has waived the sovereign immunity of the United States, exposing it to tort liability for claims "for money damages . . . for injury or loss of

property, or personal injury or death caused by the negligent or wrongful act or omission of any

employee of the Government while acting within the scope of his office or employment," when

certain conditions are satisfied.  28 U.S.C. § 1346(b)(1).  The United States is liable under the

FTCA only to the extent that a "private person[] would be liable . . . in accordance with the law

of the place where the act or omission occurred," *id.*, and only "in the same manner and to the

same extent as a private individual under like circumstances." 28 U.S.C. § 2674.  Thus, "the

substantive law of each state establishes the cause of action."  *Anderson v. United States*, 669

F.3d 161, 164 (4th Cir. 2012).

One of the conditions of the FTCA's waiver of sovereign immunity is a requirement of

notice to the federal agency that employed the alleged tortfeasor.  The notice requirement is

established by 28 U.S.C. § 2675(a), which provides (with exceptions not relevant here):

> An action shall not be instituted upon a claim against the United States for money
> damages for injury or loss of property or personal injury or death caused by the
> negligent or wrongful act or omission of any employee of the Government while
> acting within the scope of his office or employment, unless the claimant shall
> have first presented the claim to the appropriate Federal agency and his claim
> shall have been finally denied by the agency in writing and sent by certified or
> registered mail.

A notice of claim must include a demand for a sum certain in damages, and a subsequent

tort action may "not be instituted for any sum in excess of the amount the claim presented to the

federal agency, except where the increased amount is based upon newly discovered evidence not

reasonably discoverable at the time of presenting the claim to the federal agency, or upon

allegation and proof of intervening facts, relating to the amount of the claim."  28 U.S.C.

§ 2675(b).  The federal agency cannot hold the claimant in limbo, perpetually awaiting a

decision on the claim before suit can be filed, because of the so-called "deemer" clause of

§ 2675(a): "The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section."

The time for submission of a notice of claim to the agency and the statute of limitations for the filing of a subsequent lawsuit under the FTCA are established by 28 U.S.C. § 2401(b).  It states:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.[5]

The Fourth Circuit has consistently stated that "the requirement of filing an administrative claim is jurisdictional and may not be waived."  *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986); *accord Drew v. United States*, 217 F.3d 193, 196 (4th Cir.) ("Where . . . a claim is not first presented to the appropriate agency, the district court must, pursuant to Fed. R. Civ. P. 12(b)(1), dismiss the action for want of subject matter jurisdiction."), *aff'd en banc by equally divided court*, 231 F.3d 927 (4th Cir. 2000), *cert. denied*, 532 U.S. 1037

---

[5] Although § 2401(b) uses the phrase "or unless" to connect its two requirements, when considered in context, the phrase has uniformly been interpreted to mean "and."  *See, e.g.*, *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986) (stating that § 2401(b) "provides that a claim must be 'presented in writing to the appropriate federal agency within two years after such claim accrues' *and* that a civil action must be commenced within six months after the final denial of the claim by the agency") (emphasis added and omitted).  In *Ellison v. United States*, 531 F.3d 359 (6th Cir. 2008), the Sixth Circuit reviewed and explained the case law regarding this issue of statutory interpretation, observing that any other reading of the statute "would effectively eliminate *any* court deadline" for initiating an FTCA lawsuit.  *Id.* at 362 (emphasis in original).

(2001); *Kokotis v. United States Postal Serv.*, 223 F.3d 275, 278 (4th Cir. 2000); *Ahmed v. United States*, 30 F.3d 514, 516 (4th Cir. 1994).[6]

In this case, the government has submitted, as exhibits to its Motion, two letters sent by plaintiff's counsel in 2009 to divisions within the VA. Taken together, they constitute plaintiff's notice of claim under the FTCA. The government does not contest the sufficiency of the letters as notice to the agency of plaintiff's claims regarding the 2009 surgery and associated post-surgical care. But, it vigorously disputes their sufficiency as to the 2006 surgery.

The first letter, dated August 12, 2009, was addressed to Linda M. Keldsen, the Director of Patient Safety and Risk Management for the VA Maryland Health Care System. *See* Ex.1 to Motion (ECF 24-1). It discussed plaintiff's 2009 surgery, performed by Dr. Gottlieb, and Dr. Ezeude's alleged failure to diagnose the cause of plaintiff's post-surgical pain. The letter did not mention Dr. Thompson or Dr. Motray, nor did it mention the first surgery, performed in 2006. However, it stated: "The initial negligent surgery was done at the Washington, DC VA Hospital in *2004*." ECF 24-1 at 1 (emphasis added). The second letter, dated October 12, 2009, was

---

[6] In several cases over the past decade, the Supreme Court has "endeavored . . . to 'bring some discipline' to the use of the term 'jurisdictional,'" and has "pressed a stricter distinction between truly jurisdictional rules, which govern 'a court's adjudicatory authority,' and nonjurisdictional 'claim-processing rules,' which do not." *Gonzalez v. Thaler*, ___ U.S. ___, 132 S. Ct. 641, 648 (2012) (quoting *Henderson v. Shinseki*, ___ U.S. ___, 131 S. Ct. 1197, 1202-03 (2011), and *Kontrick v. Ryan*, 540 U.S. 443, 454-55 (2004)); *see also Dolan v. United States*, ___ U.S. ___, 130 S. Ct. 2533, 2538 (2010); *Reed Elsevier, Inc. v. Muchnick*, ___ U.S. ___, 130 S. Ct. 1237, 1243-44 (2009); *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen'l Cmte. of Adjustment*, ___ U.S. ___, 130 S. Ct. 584, 596-97 (2009); *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133-34 (2008); *Bowles v. Russell*, 551 U.S. 205, 209-13 (2007); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510-13 (2006); *Eberhart v. United States*, 546 U.S. 12, 15-20 (2005) (per curiam); *Scarborough v. Principi*, 541 U.S. 401, 413-14 (2004). However, the Supreme Court has not addressed the character of the FTCA's notice requirement, nor has the Fourth Circuit altered its prior conclusions in light of the Supreme Court's recent cases. Therefore, the circuit precedent holding that the notice requirement is jurisdictional remains controlling.

addressed to the VA's Office of Regional Counsel.  *See* Ex.2 to Motion (ECF 24-2).  It stated

that it would "served as a supplement to the previously submitted 'notice to file a claim' letter

dated August 12, 2009", and demanded $2 million in damages.  *See id.*  It did not mention the

first surgery, however, which was allegedly performed on July 26, 2006.

     The government observes that plaintiff "did not submit an administrative claim to the VA

until August 12, 2009, more than two years after the purportedly negligent surgery."  Motion at

6.  Moreover, it points out that the letters from plaintiff's counsel do "not even mention Dr.

Thompson or the surgery performed on July 26, 2006."  *Id.*  Accordingly, the government

reasons: "Because the plaintiff failed to file an administrative claim within two years, her

allegations pertaining to the July 26, 2006 surgery must be dismissed for lack of subject matter

jurisdiction."  *Id.*

     Plaintiff counters that, although the first surgery occurred in 2006, her tort claim did not

accrue until she discovered, or could have discovered, that she was injured by medical

negligence in the performance of the first surgery.  *See* Opp. at 3-4.  For this proposition, she

relies on Maryland cases endorsing the "'discovery rule,' which 'tolls the accrual date of the

action until such time as the potential plaintiff either discovers his or her injury, or should have

discovered it through the exercise of due diligence.'"  *Poole v. Coakley & Williams Const., Inc.*,

423 Md. 91, 131, 31 A.2d 212, 236 (2011) (quoting *MacBride v. Pishvaian*, 402 Md. 572, 581,

937 A.2d 233, 238 (2007)); *see also Poffenberger v. Risser*, 290 Md. 631, 634, 431 A.2d 677,

679 (1981).  Plaintiff has submitted her own affidavit, *see* Ex.2 to Opp. (ECF 29-2), in which she

avers that, "during a pre-operative visit" in March 2009, in preparation for the second surgery,

"Dr. Gottlieb indicated that the surgery of 2006 performed by Janette Thompson created the

nerve entrapment for which [sic] necessitated the May 28, 2009 surgery," and that "he needed to correct and rectify [Dr. Thompson's] errors, as it was not just a matter of the 2006 surgery being unsuccessful." *Id.* ¶¶ 3, 5. According to Ms. Wilson, she made "constant complaints to Dr. Thompson following the 2006 surgery," but "proper follow-up care was not given." *Id.* ¶ 4. Further, she alleges: "Despite the constant issues/pain that I had following the 2006 surgery, I did not learn that possible negligence was involved until I was advised by Dr. Gottlieb and read the medical reports." *Id.* ¶ 6.

Although plaintiff is correct that the discovery rule applies to the FTCA's statute of limitations, her reliance on Maryland state law for the proposition is misplaced. The Fourth Circuit recently reiterated in *Anderson*, 669 F.3d at 164, that, "[w]hereas substantive state law establishes—and circumscribes—FTCA causes of action, 'federal law defines the limitations period.'" (Quoting *Miller v. United States*, 932 F.2d 301, 303 (4th Cir. 1991)). As noted, 28 U.S.C. § 2401(b) provides that notice of an FTCA claim must be given "within two years after such claim *accrues*." (Emphasis added.)

In *United States v. Kubrick*, 444 U.S. 111 (1979), the Supreme Court adopted a version of the discovery rule pertaining to the "accrual" of FTCA claims. Like this case, *Kubrick* was a medical malpractice case regarding allegations of negligence against physicians employed by the VA. The Supreme Court held that, although an FTCA claim will ordinarily "accrue[] at the time of the plaintiff's injury," *id.* at 120, accrual cannot occur until the plaintiff gains "possession of the critical facts that he has been hurt and who has inflicted the injury." *Id.* at 122. The Court reasoned: "That [the plaintiff] has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in control of the putative defendant,

unavailable to the plaintiff or at least very difficult to obtain." *Id.* However, the *Kubrick* Court rejected the argument that an FTCA claim does not "accrue until a plaintiff learns that his injury was negligently inflicted." *Id.* at 120.

The facts of *Kubrick* illuminate the issues here. The plaintiff had an infection and was treated with an antibiotic drug at a VA hospital in 1968. Within weeks of his discharge from the hospital, he began to notice a loss of hearing. *Id.* at 113-14. In 1969, one of Kubrick's physicians, Dr. Sataloff, informed him that it was "highly possible" that his hearing loss was the result of the antibiotic treatment. *Id.* at 114. In 1971, another physician, Dr. Soma, advised him that the antibiotic "had caused his injury and should not have been administered." *Id.* Kubrick filed suit under the FTCA in 1972. *Id.* at 115. The district court ruled that Kubrick's suit was timely because, in its view, his claim did not accrue "'until the plaintiff had reason at least to suspect that a legal duty to him had been breached,'" and the court found that "Kubrick had no reasons to suspect negligence until his conversation with Dr. Soma in June 1971, less than two years prior to presentation of his tort claim." *Id.* at 116 (quoting district court). The Third Circuit affirmed, *id.* at 116, but the Supreme Court reversed.

In sum, the *Kubrick* Court rejected the view that "a malpractice plaintiff under the [FTCA] must know the legal implications of the facts, as well as the facts themselves, before the limitations period will begin to run." *Id.* at 121 n.8. In other words, a plaintiff's "ignorance of his legal rights" does not bar the accrual of his claim. *Id.* at 122. In the Court's view, Kubrick's claim accrued at the time of his conversation with Dr. Sataloff in 1969, because he was "in possession of all of the facts about the cause of his injury" since that time. *Id.* at 123.

As the Fourth Circuit has recognized: "The clear import of *Kubrick* is that a claim accrues within the meaning of § 2401(b) when the plaintiff knows or, in the exercise of due diligence, should have known both the existence and the cause of his injury." *Gould v. U.S. Dept. of Health & Human Servs.*, 905 F.2d 738, 742 (4th Cir. 1990); *accord Kerstetter v. United States*, 57 F.3d 362, 364-65 (4th Cir. 1995) (holding that, under *Kubrick*, an FTCA medical malpractice claim accrues when the plaintiff knows that "*the operation* caused the injury," even if the plaintiff does not know the "*precise medical reason* for the injury") (emphasis in original); *Gilbert v. United States*, 720 F.2d 372, 374 (4th Cir. 1983) ("The Supreme Court has determined that a cause of action accrues within the meaning of § 2401(b) when a prospective plaintiff knows of both the existence of his injury and its cause.").  It follows from *Kubrick* that plaintiff is mistaken in asserting that her claim did not accrue until she learned (allegedly) from Dr. Gottlieb that the pain she continued to experience from the first surgery was the result of medical negligence.  As soon as plaintiff knew that her injury was caused by the first surgery, her claim accrued under the discovery rule articulated in *Kubrick*, regardless of when she became aware that she might have a negligence claim against Dr. Thompson.

Nevertheless, in interpreting *Kubrick*, the Fourth Circuit has concluded that an FTCA malpractice claim does not accrue "when physicians' mistaken diagnoses about (or utter inability to diagnose) the medical cause of [the plaintiff's] injury prevent her from identifying the party likely responsible for her injury." *Kerstetter*, 57 F.3d at 365 (citing *Osborn v. United States*, 918 F.2d 247 (8th Cir. 1990)).  Nor does it accrue "when a physician assures her patient that the evident ill effects of a medical procedure will be temporary, [because] the patient does not know that he has suffered an 'injury' until he learns that the harm will not in fact go away."

*Kerstetter*, 57 F.3d at 366 (citing *McDonald v. United States*, 843 F.2d 247 (6th Cir. 1988), and *Otto v. NIH*, 815 F.2d 985, 989 (4th Cir. 1987)).   Therefore, in all likelihood, plaintiff's claim did not accrue immediately after the first surgery was performed in 2006.   Rather, it accrued at some later point, when plaintiff became aware that the first surgery had caused her injury.

Arguably, between plaintiff's first surgery in July 2006 and the pre-operative consultation with Dr. Gottlieb in March 2009, during which time plaintiff was experiencing "constant . . . pain," ECF 29-2 ¶ 6, she must have realized that the surgery did not resolve the problem with her foot and, indeed, exacerbated it.   Surely, "in the exercise of due diligence, [she] should have known" that she suffered an injury from the first surgery.   *Gould*, 905 F.2d at 742.   From the evidence in the record, however, it is impossible to ascertain the date of that critical occurrence.

Nevertheless, it is not necessary to determine when plaintiff's claim regarding the first surgery accrued.   This is because plaintiff never gave the VA any notice of any claim involving the first surgery.   Even if plaintiff's claim accrued less than two years before her notice letter of August 12, 2009, that letter entirely omitted any mention of the 2006 surgery.   Put another way, plaintiff's problem with respect to the 2006 surgery is not that she failed to provide timely notice of her claim to the VA; it is that she failed to provide any notice at all.

This conclusion is plainly evident from the content of the notice letter of August 12, 2009.   The closest it comes to mentioning the first surgery is the statement that the "initial negligent surgery was done at the Washington, DC VA hospital in *2004*."   (Emphasis added.) There is no indication in the record, one way or the other, as to whether plaintiff actually underwent a surgery in 2004.   But, from this statement, no recipient of the letter could have been placed on notice of a claim regarding the 2006 surgery.

Even if the reference to a 2004 surgery was a typographical error that could be overlooked, the letter is deficient for other reasons. It did not name Dr. Thompson or provide any other details regarding the surgery. Notice of an FTCA claim "must be sufficiently detailed so that the United States can 'evaluate its exposure as far as liability is concerned,'" and must "provide a sufficient factual predicate so that [the] claim can be investigated." *Davis*, *supra*, 217 F.3d at 198 (internal citations and some internal quotation marks omitted). As to the 2006 surgery, plaintiff's notice of claim failed to satisfy that standard under any interpretation.

Alternatively, plaintiff argues that "an administrative claim filed by the plaintiff involving the 2006 surgery would have more than likely been denied and thus futile." Opp. at 5. But, as the Tenth Circuit aptly observed, "'[b]ringing an administrative claim [under the FTCA] is a jurisdictional prerequisite to suit, imposed by Congress, which the courts have no power to waive.' A plaintiff's claim that administrative remedies were not pursued because pursuit would have been futile does not excuse this jurisdictional requirement." *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 967 (10th Cir. 1994) (internal citations omitted); *see also Howard v. Milam*, 905 F.2d 1529, 1990 WL 74309 (4th Cir. May 10, 1990) (unreported) (table) (rejecting argument that FTCA notice requirement "should be waived as futile" as "flatly inconsistent with Congressional intent behind the exhaustion requirement, and . . . meritless").

For all of the foregoing reasons, plaintiff failed to provide notice to the VA of her claim regarding the 2006 surgery, as required by the FTCA. Accordingly, the Court lacks jurisdiction over her allegations regarding the 2006 surgery involving Dr. Thompson.[7]

---

[7] Because the Court lacks jurisdiction over claims regarding the 2006 surgery, I need not resolve the government's alternative argument that plaintiff's certificate and report of qualified expert are deficient with respect to the 2006 surgery.

C.  The Second Surgery and Post-Surgical Care and the Expert Certificate and Report

The government contends that the Court also lacks jurisdiction over plaintiff's claims regarding the care she received from Dr. Gottlieb and Dr. Ezeude, because of alleged deficiencies in plaintiff's expert certificate and report, prepared pursuant to Maryland's Malpractice Claims Act.  As I have discussed, the substantive tort law applicable in an FTCA lawsuit is the tort law of the "place where the act or omission occurred."  28 U.S.C. § 1346(b)(1). To be sure, judges in this district have consistently held that the conditions precedent to suit imposed by the Malpractice Claims Act apply in an FTCA action brought under Maryland tort law for the medical malpractice of a federally employed health care provider.  *See Wilson II*, 821 F. Supp. 2d at 791 n.18 ("[A] long line of authority in this Court has held that the provisions of the Malpractice Claims Act with respect to the filing of a claim and expert certificate in the HCADRO apply with equal force to claims against physicians employed by the United States.") (citing *Willever v. United States*, 775 F. Supp. 2d 771 (D. Md. 2011); *Hampel v. United States*, 706 F. Supp. 2d 629 (D. Md. 2010); *Mizrach v. United States*, Civ. No. AMD-08-2030 (D. Md. Feb. 17, 2009), *aff'd per curiam*, 334 F. App'x. 571 (4th Cir. 2009) (unreported), *cert. denied*, ___ U.S. ___, 130 S. Ct. 3516 (2010); *Anderson v. United States*, Civ. No. CCB-08-3, 2008 WL 3307137 (D. Md. Aug. 8, 2008); *Mayo-Parks v. United States*, 384 F. Supp. 2d 818 (D. Md. 2005)); *Wilson I*, 2011 WL 582577, at *3-4.  However, it does not follow that deficiencies in plaintiff's expert certificate and report deprive this Court of subject matter jurisdiction.

According to the government, because the Maryland Court of Appeals has held that "the filing of a proper [expert] Certificate is a condition precedent to maintaining a claim for malpractice," *Carroll*, *supra*, 400 Md. at 181, 929 A.2d at 27, the submission of a sufficient

expert certificate and report is a "jurisdictional prerequisite to filing a medical malpractice claim in Maryland." Motion at 6. The government is incorrect. Maryland's appellate courts repeatedly have held that the "adequacy of the Certificate" under the Malpractice Claims Act "is not jurisdictional." *Barber v. Catholic Health Initiatives, Inc.*, 180 Md. App. 409, 438, 951 A.2d 857, 874, *cert. denied*, 406 Md. 192, 957 A.2d 999 (2008); *see also Otoxby v. McGowan*, 294 Md. 83, 91, 447 A.2d 860, 864-65 (1982) (stating that the conditions precedent to suit in the Malpractice Claims Act do "not take away the subject matter jurisdiction of a circuit court to hear and render judgments in cases involving claims which fall within the Act"); *Azarian v. Witte*, 140 Md. App. 70, 80, 779 A.2d 1043, 1049 (2001) (stating, in reviewing trial court's determination as to adequacy of expert certificate, "we feel impelled to address . . . what appears to be a confusion of concepts engendered by appellants' mistaken use of the term 'jurisdiction' in framing this issue"), *aff'd*, 369 Md. 518 801 A.2d 160 (2002).

Nevertheless, the Maryland courts have stressed the importance of the conditions precedent established by the Malpractice Claims Act, and have characterized them in quasi-jurisdictional terms. In *Carroll*, *supra*, 400 Md. 167, 929 A.2d 19, the Maryland Court of Appeals held that "the filing of a proper Certificate operates as a condition precedent" to suit, and stated that the condition precedent "'cannot be waived under the common law and a failure to satisfy it can be raised at any time because the action itself is fatally flawed if the condition is not satisfied.'" *Id.* at 181-82 & n.12, 929 A.2d at 28 & n.12 (citation omitted). Because the conditions precedent are not jurisdictional, however, the question of whether they have been satisfied is appropriately resolved in the context of a motion to dismiss for failure to state a claim, *see, e.g.*, *Carroll*, 400 Md. at 176, 929 A.2d at 24, or a motion for summary judgment,

*see, e.g.*, *Azarian*, 140 Md. App. at 93-94, 779 A.2d at 1056, rather than a motion to dismiss for lack of jurisdiction.

In this case, even if I consider the government's Motion as one for summary judgment, the expert certificate requirement does not apply to this case due to its unusual procedural posture. Alternatively, the government's challenge to the sufficiency of plaintiff's expert certificate and report is without merit.

Before explaining my reasoning, I pause to set out in greater detail the statutory requirements pertaining to expert certificates and reports under the Malpractice Claims Act. In the first instance, the Act requires that a claimant file an expert report and certificate in the HCADRO. Ordinarily, within 90 days after the filing of a claim with the HCADRO, the claimant must file a "certificate of a qualified expert," accompanied by a report of the expert, attesting "to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury." C.J. § 3-2A-04(b)(1)(i)(1), (b)(3)(i).[8] In *Carroll*, 400 Md. at 172, 929 A.2d at 22, the Maryland Court of Appeals held that the claimant's expert certificate, "at a minimum, must identify with specificity, the defendant(s) (licensed professional(s)) against whom the claims are brought, include a statement that the defendant(s) breached the applicable standard of care, and that such a departure from the standard of care was the proximate cause of the plaintiff's injuries."[9] If a defendant disputes liability, the defendant must file, within 120 days after service of the claimant's certificate and report, a similar expert certificate and report, "attesting to compliance with standards of care, or that the departure from

---

[8] An expert certificate is not required if "the sole issue in the claim is lack of informed consent." C.J. § 3-2A-04(b). That is not the case here.

[9] In the case of a claim against a physician, the HCADRO sends copies of the expert certificates and reports to Maryland's State Board of Physicians. *See* C.J. § 3-2A-04(b)(6).

standards of care is not the proximate cause of the alleged injury."   C.J. § 3-2A-04(b)(2)(i).

Extensions of the time for filing expert certificates and reports may be granted by the HCADRO,

"for good cause shown."  C.J. § 3-2A-04(b)(5).

In order to be qualified to submit a certificate and report, an expert must "have had

clinical experience, provided consultation relating to clinical practice, or taught medicine in the

defendant's specialty or a related field of health care, or in the field of health care in which the

defendant provided treatment to the plaintiff, within 5 years of the date of the alleged act or

omission giving rise to the cause of action" and, subject to certain exceptions, "if the defendant is

board certified in a specialty," must be "board certified in the same or a related specialty as the

defendant."  C.J. § 3-2A-02(c)(ii).  However, an expert is not qualified to submit a certificate and

report if the expert "devote[s] annually more than 20 percent of the expert's professional

activities that directly involve testimony in personal injury claims."  C.J. § 3-2A-04(b)(4).  In

addition, a party or certain persons in privity are also ineligible to serve as experts.  C.J. § 3-2A-

04(b)(7).  "Discovery is available as to the basis of the certificate."   C.J. § 3-2A-04(b)(3)(ii).

The Maryland courts have held that a certificate by an expert who lacks the qualifications

required by the statute does not satisfy the condition precedent.  *See, e.g.*, *Witte*, *supra*, 369 Md.

518, 801 A.2d 160 (reviewing whether expert satisfied the so-called "20 Percent Rule").

At any time between the filing of the claimant's expert certificate and sixty days after all

parties have filed expert certificates, any party can waive arbitration unilaterally, which

terminates proceedings in the HCADRO.  *See* C.J. § 3-2A-06B(a) to (d)(1).  Moreover, the

parties may jointly waive arbitration at any time before the claim is heard by an arbitration panel.

*See* C.J. §§ 3-2A-06A(a) to (b), 3-2A-06B(d)(2).   In either event, within sixty days after

arbitration is waived, the plaintiff must file a complaint in an appropriate court.  *See* C.J. §§ 3-2A-06A(c), 3-2A-06B(f).  Notably, the Malpractice Claims Act expressly contemplates that suit may be filed either in a Maryland circuit court or the United States District Court.  *See* C.J. §§ 3-2A-06A(c), 3-2A-06B(f).

Because either party may waive arbitration once the claimant's expert certificate and report have been filed, it follows that arbitration may be waived and a judicial proceeding may be initiated before a defendant has filed an expert certificate and report.  In that event, the Malpractice Claims Act requires the defendant to file an expert certificate and report in the judicial proceeding.  *See* C.J. § 3-2A-06B(b)(3) and (c)(3).  However, in *Willever v. United States*, *supra*, 775 F. Supp. 2d 771, 778-86 (D. Md. 2011), Judge Roger W. Titus held that, if arbitration is waived before a defendant's expert certificate and report are filed, and the medical malpractice suit is subsequently conducted in federal court, the statutory provision requiring the defendant to file an expert certificate and report is supplanted by the expert disclosure provisions of Fed. R. Civ. P. 26(a)(2).  He reasoned that, when "a state law conflicts with a Federal Rule of Civil Procedure, the federal courts [ordinarily] must apply the Federal Rule."  *Willever*, 775 F. Supp. 2d at 779 (citing, *inter alia*, *Hanna v. Plumer*, 380 U.S. 460 (1965)).

The government contends that plaintiff's expert certificate and report, prepared by Dr. Joseph R. Disabato, D.P.M., are deficient as to the claims regarding Dr. Gottlieb and Dr. Ezeude, for several reasons.  In particular, the government argues that Dr. Disabato's certificate and report fail to identify the applicable standard of care, who violated the standard of care, and how the standard of care was violated.  *See* Motion at 8.  And, in the government's view, Dr.

Disabato's certificate and report "do not opine that [Ms. Wilson] suffered any permanent or ongoing injuries as a result of the purported breach of the standard of care." Motion at 10.

Dr. Disabato's certificate and report have not actually been filed by plaintiff as independent submissions in this case. Rather, copies were submitted by the parties as exhibits in connection with the briefing of the Motion. According to the government, plaintiff filed Dr. Disabato's certificate and the first page of his report in the HCADRO on August 1, 2011, several months after the case was removed from the HCADRO (but before I rendered my decision in *Wilson II*, holding that removal was permissible under 28 U.S.C. § 1442). Motion at 3. The government reports that plaintiff provided it with copies of the certificate and first page of his report on August 15, 2011, and provided the complete report on August 29, 2011.[10] *Id.*

In his certificate, Dr. Disabato avers that he is a surgical podiatrist licensed to practice medicine in Virginia and, upon review of Ms. Wilson's records, he is "of the opinion with a reasonable degree of medical certainty" that Dr. Gottlieb and Dr. Ezeude "did not meet the applicable standard of care and that the Plaintiff's alleged injuries are the proximate cause of their action or omission by this or these Defendants." Ex.4 to Motion at 3 (ECF 24-4). In his report, dated July 22, 2011, Dr. Disabato expands upon his certificate, stating, in part:

> Gail Wilson, Claimant . . . underwent a tarsal tunnel decompression at the Baltimore VAMC by Dr. David H. Gottlieb, D.P.M. on May 28, 2009 for recalcitrant foot and ankle pain.

---

[10] Plaintiff contends that a copy of the certificate and report were sent to the government on July 27, 2011, and, after plaintiff was advised that the government had "not received all pages," another copy was "promptly forwarded" to the government on August 11, 2011. Opp. at 2. Although the government disagrees, *see* Reply at 1 n.1, and it has noted the dates on which the documents were provided, it does not challenge the certificate and report on the basis of timeliness.

From the records, particular foreign materials were utilized consistent with and within the standard of care of this procedure.  These materials listed in the operative report are Integra NeuraWrap and a surgical drain.  The Integra NeuraWrap is a material that is often times used during peripheral nerve [sic] to protect the nerve in question and to allow for healing.  The surgical drain was appropriately used to avoid post-operative hematoma formation.  The development of a hematoma following surgery can have detrimental effects on wound healing and increase the risk of infection.

From the records, on July 6, 2009 the Claimant was admitted to the Baltimore VAMC with a right foot infection.  During her admission, right foot radiographs and a CT scan were obtained.  The CT scan revealed the possibility of a segment of catheter tubing within the medial soft tissues of the ankle.  Additionally, noted was thick soft tissue swelling.  The two implantable materials that were utilized [sic] the Integra NeuraWrap or the surgical drain could have been the cause of the Claimant's infection and pain.  During the Claimant's first post-operative visit an attempt was made to remove the surgical drain.  At the time, there was no mention or concern that the drain was not removed in total; therefore, further studies were not obtained.

However, during a clinic visit with Dr. Gottlieb on July 7, 2009, Dr. Gottlieb's note suggests that the post-operative infection was caused by the retained drain that unfortunately was not removed completely initially.  Therefore, the Claimant was taken back to the OR on July 9, 2009 to have the remaining portion of the drain removed.  The intraoperative findings listed from the operative report were: "retained foreign body, Vessel tie."

From the records, it appears that the retained portion of the wound drain was the cause for the post-operative infection and pain.

The government argues that Dr. Disabato's report is deficient because it "never identifies the applicable standard of care governing how long the surgical drain should have been left in place following surgery.  Nor does it state who—Dr. Gottlieb or Dr. Ezeude—was expected to remove it."  Motion at 10.  It also complains that "the report never actually states that the removal of the drain in this case violated that standard of care."  *Id.*  In the absence of this information, argues the government, the certificate and report are deficient as a matter of law.  The government also finds fault because Dr. Disabato "did not opine that the delay in removing

the surgical drain proximately caused a permanent or ongoing injury," and "did not mention any continued mental or physical pain, permanent disability, hospitalizations, or complications." Motion at 11.  However, the government cites no authority for the proposition that a "permanent or ongoing injury" is a predicate to recovery for medical malpractice in Maryland.

In response, plaintiff has submitted an addendum dated November 4, 2011, prepared by Dr. Disabato in response to the alleged deficiencies identified by the government.  Ex.6 to Opp. (ECF 29-6).  In the addendum, Dr. Disabato states:

> The purpose of this addendum is not to change but to clarify my opinion.
>
> The records indicate that it was the responsibility of David H. Gottlieb, DPM to remove the surgical drain post-operatively from the tarsal tunnel surgery that was performed on May 28, 2009.  The standard time frame to remove a surgical drain of this nature is from one to five days post-operatively.  Furthermore, it is the responsibility and the "standard of care" of the party removing the drain to remove it in total.   Apparently, from the records the wound drain was not removed in total and this was the probable cause for the post-operative infection. Therefore, this deviation from the "standard of care"—incomplete removal and delay in diagnosis caused additional surgery, treatment and pain and suffering to the patient.

In its reply, the government appears to acknowledge that the addendum identifies the standard of care and alleges Dr. Gottlieb's breach of the standard.[11]  However, the government maintains that the "clarification that Dr. Gottlieb was responsible for removing the surgical drain clears Ngozi E. Ezeude of any alleged negligence."  Reply at 3 n.2.  Moreover, it contends that the addendum remains deficient as to the allegations against Dr. Gottlieb, because Dr. Disabato "merely opines that the alleged negligence 'was the *probable* cause for the post-operative infection,' and 'caused additional surgery, treatment and pain and suffering to the plaintiff.'  He

---

[11] The government does not contend that an expert report cannot be amended.

does not opine, as the plaintiff contends, that the alleged negligence resulted in any permanent injury." Reply at 4 (government's emphasis).

In my view, the parties' dispute as to the sufficiency of the certificate and report is beside the point; in light of its unusual procedural posture of this case, the requirement pertaining to the certificate and report does not apply. To be sure, as I have reviewed, it is well settled that Maryland's Malpractice Claims Act requires the filing of an expert certificate and report in the HCADRO as a mandatory condition precedent to maintenance of a medical malpractice suit in a Maryland court. But, this case has not proceeded in the manner envisioned by the Malpractice Claims Act.

As noted, plaintiff filed her claim with the HCADRO in January 2011. Before plaintiff filed her expert certificate and report, the government removed the proceeding from the HCADRO. Applying the Fourth Circuit's decision in *Kolibash*, I upheld the removal in *Wilson II*, concluding there that a federal officer may remove a proceeding from the HCADRO under 28 U.S.C. § 1442, due to the important federal interest in the provision of a federal forum. But, as we have seen, the Act is structured such that arbitration cannot be waived, and a judicial proceeding cannot be instituted, until the plaintiff has filed an expert certificate and report.

In effect, by removing the case when it did, the government performed an end run around the procedures envisioned by the Act. The government cannot have its cake and eat it too; it cannot remove a proceeding from the HCADRO before a plaintiff has satisfied a condition precedent that must be satisfied in the HCADRO proceeding, thereby converting the state administrative proceeding into a federal lawsuit, and then seek dismissal of the federal suit on the

basis that the plaintiff failed, before the suit was removed, to comply with a condition precedent that must be satisfied in the HCADRO.

In this regard, I find instructive Judge Titus's decision in *Willever*, *supra*, 775 F. Supp.2d 771, although it did not involve the same unusual circumstances attendant in this case. In *Willever*, an FTCA case, the plaintiffs alleged medical malpractice committed by a federally employed physician. Unlike this case, *Willever* followed the procedural path established by the Malpractice Claims Act. The plaintiffs submitted notice of their claim under the FTCA. After the claim was deemed denied due to the agency's failure to act within six months, the plaintiffs filed a claim in the HCADRO, along with a certificate and report of qualified expert and a waiver of arbitration. *Id*. at 774-75. Having satisfied the conditions precedent to suit, the plaintiffs then filed suit in this court against the United States, pursuant to the FTCA. *Id.* at 775. The United States filed an answer, and the court issued a scheduling order establishing various deadlines for the discovery process, including deadlines for the parties' expert witness disclosures under Fed. R. Civ. P. 26(a)(2). *Id.*

As noted, the Malpractice Claims Act requires that, if arbitration is waived in favor of a judicial proceeding before the defendant's expert certificate and report have been filed, the defendant must file its expert certificate and report in the judicial proceeding. *See* C.J. § 3-2A-06B(b)(3) and (c)(3). Notably, under the Act, a malpractice claim "may be adjudicated in favor of the claimant or plaintiff on the issue of liability, if the defendant disputes liability and fails to file" timely its expert certificate and report. C.J. § 3-2A-04(b)(2)(i). According to the plaintiffs' calculations in *Willever*, the expert certificate and report of the United States were due under the Maryland Malpractice Claims Act before the scheduled date for the Rule 26(a)(2) expert

disclosures.  *Id.*  Because the United States did not file an expert certificate and report by the statutory due date, as calculated by the plaintiffs, plaintiffs moved for partial summary judgment as to liability, based on the government's failure to file the certificate and report.  *Id.* at 775-76.

Judge Titus denied the plaintiffs' motion.  As noted, he ruled that the requirements of the Malpractice Claims Act "concerning defendant's filing of an expert certificate and report directly conflict with Federal Rules of Civil Procedure 26(a)(2), 37(c) and 55(d)," and that, in light of the conflict, "the Federal Rules control and [the Malpractice Claims Act's] defendant's expert disclosure requirements cannot be applied in federal court."  *Id.* at 778.  Judge Titus reasoned that, "even if the Federal Rules and [Malpractice Claims Act] do not conflict," the Act's requirements regarding defense expert certificates and reports "are procedural, rather than substantive rules," which are not applied in federal court under the *Erie* doctrine.  *Id.*[12]

To be sure, Judge Titus also emphasized the precedent in this Court holding that "*plaintiff's* certificate and expert report requirements" are "'substantive,'" because they are a condition precedent to suit.  *Id.* at 784-85 (emphasis in original).  However, neither *Willever* nor any other case of which I am aware has involved the unusual scenario presented here, in which the defendant removed the proceeding from the HCADRO before the plaintiff complied with the

---

[12] In addition to the conclusions discussed above, Judge Titus determined that the Malpractice Claims Act's expert certificate and report requirements could not be applied against the United States on grounds of sovereign immunity, *see Willever*, 775 F. Supp. 2d at 787-88, and that, even if judgment as to liability could be entered against the United States for failure to comply with the requirements, he would exercise his discretion not to do so under the circumstances of the case.  *Id.* at 789-90.

After *Willever* was decided, the Maryland Court of Appeals issued its decision in *Lewis v. Waletzky*, 422 Md. 647, 31 A.3d 123 (2011), holding that the claim filing requirements of the Malpractice Claims Act are "procedural provisions of Maryland law" for choice of law purposes. *Id.* at 666, 31 A.2d at 135.  But, it recognized that whether a legal requirement is substantive or procedural for purposes of choice of law is a distinct issue from whether it is substantive or procedural for purposes of the *Erie* doctrine.  *See id.* at 658 n.9, 31 A.3d at 130 n.9.

certificate and report requirement, and then sought to dismiss the case on the basis of deficiencies in the certificate and report.  As I see it, given the unusual posture of this case, the result is the same as in *Willever*: the expert disclosure requirements of the Federal Rules of Civil Procedure govern, rather than those of the Malpractice Claims Act.

Even if the certificate and report requirement does apply, however, I conclude that Dr. Disabato's report, as supplemented by his addendum, satisfies the requirements of the Malpractice Claims Act, at least as to Dr. Gottlieb's liability.[13]  Dr. Disabato identified "with specificity" the "licensed professional . . . against whom the claims are brought," *i.e.*, Dr. Gottlieb.  *Carroll*, *supra*, 400 Md. at 201, 929 A.2d at 39.  He also articulated the standard of care that applies, and stated that Dr. Gottlieb "breached the applicable standard of care."  *Id.* And, in sum and substance, Dr. Disabato explained that Dr. Gottlieb's alleged "departure from the standard of care was the proximate cause of the plaintiff's injuries."

As the government points out, Dr. Disabato did not opine that Dr. Gottlieb's alleged negligence caused *permanent* injury to plaintiff.  But, the government has cited no authority for the proposition that a victim of medical malpractice may recover only for permanent injuries, and I am aware of none.  Nor do I attach any significance to the fact that Dr. Disabato stated that the alleged breach of the standard of care was the "*probable* cause," rather than the "*proximate* cause," of plaintiff's injuries.  This likely was a mere typographical error.  To reject the report on a hypertechnical basis would elevate form above substance.  In any event, it does not appreciably change the meaning conveyed by Dr. Disabato's report.

---

[13]  Assuming, *arguendo*, that the expert certificate and report requirement applied here, I would agree with the government that Dr. Disabato's report articulates no basis for liability as to Dr. Ezeude.  If expert discovery bears out Dr. Ezeude's lack of liability, the government will be free to seek summary judgment as to the claims concerning Dr. Ezeude on that basis.

Accordingly, I am not persuaded by the government's argument for dismissal as to plaintiff's claims arising from her 2009 surgery and associated post-surgical care.

One final matter remains.  Because of the unusual procedural path this case has taken, plaintiff has not actually filed a complaint.  Thus far, plaintiff's "Claim Form" and statement of "Basis of Claim," filed in the HCADRO, have served the role of a complaint.  In my view, the filing of a complaint, in accordance with the pleading requirements of the Federal Rules of Civil Procedure, would clarify the claims at issue and facilitate the advancement of the case.  Accordingly, plaintiff is directed to file a complaint, as specified in the Order implementing my rulings.

Date:   April 30, 2012                                         /s/

Ellen Lipton Hollander
United States District Judge